# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**RONALD J. HAMILTON**  **PLAINTIFF**
**ADC # 133523**

v.                    Case No. 4:21-CV-00404-LPR

**SOLOMON GRAVES, in his official capacity as**
**Secretary of the Department of Corrections; and**
**DEXTER PAYNE, in his official capacity as**
**Director of the Arkansas Division of Correction**   **DEFENDANTS**

## ORDER

Plaintiff Ronald Hamilton instituted this action pro se on May 13, 2021.[1] Mr. Hamilton was one of many Arkansas state inmates who filed lawsuits challenging Arkansas Act 1110 of 2021. On August 23, 2021, the Court consolidated all of the Act 1110 cases and chose three cases as representative test cases.[2] On December 1, 2021, the Court administratively stayed "[a]ll other cases (and motions pending in those other cases) . . . ."[3] Mr. Hamilton's case was not one of the three test cases. So his case was stayed.

On March 16, 2022, the Court entered a final Order and Judgment in the three test cases.[4] That same day, the Court ordered the administrative termination of all the other cases (including Mr. Hamilton's case) that had been stayed pending the outcome of the three test cases.[5] The Court did this because its final Order and Judgment in the three test cases "likely address[ed] or moot[ed]

---

[1] Compl. (Doc. 2).

[2] Order (Doc. 11) at 5–6.

[3] *Hayes v. Rutledge*, 4:21-cv-00347 (Doc. 254) [*hereinafter Hayes Master Docket*]. The three test cases were *Hayes*, *Lamar v. Hutchinson*, 4:21-cv-00529, and *Holloway v. Ark. Gen. Assembly*, 4:21-cv-00495.

[4] *Hayes Master Docket* (Docs. 422 & 423).

[5] Order (Doc. 12).

most of the other cases . . . ."[6]  The Court acknowledged, however, that plaintiffs in the administratively terminated cases may "believe[] there is still a live claim (related to Act 1110 or otherwise) to adjudicate."[7]  The Court therefore "allow[ed] each plaintiff in the various administratively terminated cases to move to re-open their case . . . ."[8]

On April 18, 2022, Mr. Hamilton filed a Motion to Reopen Case.[9]  Mr. Hamilton contended that, because the Court did not rule on each case individually, the plaintiffs in the stayed cases "should have their filing fees returned to them."[10]  While Mr. Hamilton used the word "returned," it was clear from the context that Mr. Hamilton was primarily seeking costs from Defendant.[11]  Specifically, Mr. Hamilton requested that the Court reopen his case and decide it on the merits consistent with the Court's ruling in *Hayes v. Rutledge*.[12]  The Court granted the Motion in part, reopening the case while emphasizing that Mr. Hamilton was not yet a "prevailing party" entitled to costs because he had not succeeded in his individual case.[13]  Defendants then filed the Motion to Dismiss presently pending before the Court.[14]  Defendants argue, among other things, that Mr. Hamilton's case should be dismissed because (1) it has become moot and (2) the doctrine of sovereign immunity bars trial on any still-live controversy.[15]

---

[6] *Id.* at 11.

[7] *Id.*

[8] *Id.*

[9] Pl.'s Mot. to Reopen (Doc. 13).

[10] *Id.* at 2.

[11] *Id.* at 1–2 ("[W]hen a plaintiff prevails . . . he is awarded his filing fees.") (first citing *Shabazz v. Norris*, No. 5:03-cv-00401, 2007 WL 2819517 (E.D. Ark. Sept. 26, 2007), then citing *Hester v. Norris*, No. 2:08-cv-00123, 2009 WL 1286851 (E.D. Ark. May 8, 2009)).

[12] *Id.* at 2.

[13] Order (Doc. 15) at 3.

[14] Defs.' Mot. to Dismiss (Doc. 19).

[15] Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 20) at 3–5, 17.

Boiled down to its core, the operative Complaint in the instant case alleges that Mr. Hamilton was wrongfully prevented from receiving his COVID-stimulus payments because of Defendants' enforcement of Act 1110.[16]  In their Motion to Dismiss papers, Defendants acknowledge that, in October of 2021, they confiscated $3,220.83 of stimulus funds from Mr. Hamilton.[17]  But they go on to say that, in compliance with this Court's rulings in the three test cases, they paid $450 in filing fees on behalf of Mr. Hamilton and then deposited the remaining $2,770.83 into Mr. Hamilton's inmate account.[18]  Defendants' Motion to Dismiss was filed over four months ago and Mr. Hamilton has not responded.

In resolving the three test cases on the merits, the Court explained that the inmates' claims really fell into two different buckets.  The first bucket covered confiscated stimulus monies used to pay court fines, fees, costs, or restitution.[19]  The second bucket covered any confiscated stimulus monies left over after the payment of such court fines, fees, costs, or restitution.[20]  With respect to the first bucket, the Court resolved all the claims in favor of the Defendants.[21]  With respect to the second bucket, the Court concluded that Plaintiffs had prevailed on two of their claims.[22]  The Court required Defendants to return the bucket-two monies to the inmates and enjoined Defendants from using or permanently retaining bucket-two monies in the future.[23]

---

[16] Am. Compl. (Doc. 10) ¶¶ 35–37.

[17] Ex. 1 (Jerry Decl.) to Defs.' Mot. to Dismiss (Doc. 19-1) ¶ 4.

[18] *Id.* ¶¶ 5–6.  The Court is able to "consider[] matters outside the pleadings" because a motion to dismiss for mootness is an attack on subject-matter jurisdiction.  *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (citation omitted).

[19] *See Hayes Master Docket*, (Doc. 422) at 8–11.

[20] *Id.*

[21] *Id.* at 8–11, 20–21.

[22] *Id.*

[23] *Id.* at 20–24.  Under the Court's permanent injunction in *Hayes*, Defendants are allowed to hold an inmate's stimulus monies for ninety days in order to ascertain whether that inmate owes any court fines, fees, costs, or restitution.  *Id.* at 23.

Mr. Hamilton's bucket-two claims are moot. Defendants have already returned those monies to Mr. Hamilton, and the Court has already enjoined Defendants from using or permanently retaining any such monies in the future. There's no merits-relief Mr. Hamilton seeks with respect to this bucket that he hasn't already received.

Mr. Hamilton's bucket-one claims are not entirely moot. That's because the Defendants have confiscated and used his $450 to pay filing fees and remain free to take similar action if there are future COVID-stimulus payments. Still, these bucket-one claims must be dismissed. They are barred by the doctrine of sovereign immunity. Mr. Hamilton's lawsuit against Defendants only named them in their official capacities, which means the lawsuit is one against the State of Arkansas.[24] The doctrine of sovereign immunity clearly applies. And, unlike in the test cases discussed above, the *Ex Parte Young* exception does not apply here. That is because the money Mr. Hamilton wants returned—the $450—has already been disbursed by Defendants.[25] Accordingly, if the Court were to order its "return," the money would necessarily have to flow from the State of Arkansas's treasury. And "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."[26]

---

[24] *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017).

[25] Like mootness, sovereign immunity is a question of subject-matter jurisdiction, and thus the Court may look to facts outside the pleadings. *See supra* note 18; *see also Riley v. United States*, 486 F.3d 1030, 1031–32 (8th Cir. 2007).

[26] *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Mr. Hamilton also seeks (1) a declaration that Act 1110 is either preempted by federal law or void for vagueness under the Fourteenth Amendment and (2) a prospective injunction prohibiting Defendants from confiscating future COVID-stimulus funds and using that money for payments of court fines, fees, costs, or restitution. *See* Am. Compl. (Doc. 10) at 17. Although this portion of his request would fit nicely in the *Ex Parte Young* exception, it suffers from other Article III problems. To be entitled to a declaratory judgment, Mr. Hamilton must seek protection against "*some future conduct*, not simply to proclaim liability for a past act." *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019) (citation omitted). The same is true for a prospective injunction: Mr. Hamilton's "standing to seek the injunction requested depend[s] on whether he [is] likely to suffer future injury from" Defendants' enforcement of Act 1110. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Mr. Hamilton's operative Complaint does not plausibly allege that he will suffer any more COVID-stimulus confiscations in the future. His operative Complaint specifically names the three COVID-stimulus statutes (providing stimulus payments) that have already been passed and implemented, and the confiscations of those payments have

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss.[27]

IT IS SO ORDERED this 11th day of January 2023.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

already occurred.  Furthermore, Mr. Hamilton's operative Complaint does not allege that there will be more COVID-stimulus statutes in the future.  Nor are there any facts in evidence or otherwise judicially noticeable that would indicate there will be more COVID-stimulus statutes in the future.  Accordingly, this Court is without jurisdiction to enter the declaratory judgment or prospective injunction sought by Mr. Hamilton.

[27] The Court understands that Mr. Hamilton considers himself a "prevailing party" entitled to receive costs, such as his federal filing fee, from Defendants. *See* Fed. R. Civ. P. 54(d)(1).  It's not entirely clear whether Mr. Hamilton qualifies as a "prevailing party" in the case at bar. *See Libertarian Party of Ark. v. Martin*, 876 F.3d 948, 952 (8th Cir. 2017) ("When a case has been rendered moot, a prevailing party is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness." (internal quotation marks and citation omitted)).  And it's also unclear whether one or more immunity doctrines would preclude taxing such costs to Defendants in this case.  Mr. Hamilton is welcome to file a post-judgment motion for costs, and the Court will consider the propriety of shifting costs after receiving the benefit of adversarial briefing.